UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORAINE PARK FARMS, LLC, d/b/a
MICHIGAN CRAFT BEEF,

               Plaintiff,               Case No. _____

v.

                                     Hon. _____

COLORADO CRAFT BEEF, LLC,

               Defendant.

---

## COMPLAINT

      Plaintiff, Moraine Park Farms, LLC d/b/a Michigan Craft Beef ("MCB" or "Plaintiff"), by and through its attorneys, VARNUM LLP, states for its Complaint against Defendant, Colorado Craft Beef, LLC ("CCB" or "Defendant"), as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiff, MCB, owns U.S. Trademark Registration No. 5,525,472 (the "Registration") for the mark CRAFT BEEF® for use in connection with "beef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups".  The application for such registration was filed on October 14, 2016, citing a date of first use of March 1, 2016.  Registration was granted by the United States Patent and Trademark Office ("USPTO") on July 24, 2018.

      2.     Plaintiff, MCB, has continuously sold its goods, namely, beef-related products produced with a ration that includes by-products from craft beer making operations, under the

CRAFT BEEF mark for over the last eight years, since at least as early as its recited date of first use of March 1, 2016.

3.      Defendant, CCB, appears to offer identical goods, namely, beef-related products that are also produced with a ration that includes the by-products from craft beer making operations, under the mark COLORADO CRAFT BEEF in standard character form and various design forms.

4.      Near the end of the 2023 calendar year, Defendant, CCB—with not only constructive knowledge based on the Registration, but also full and actual knowledge of MCB and its federally-registered trademark rights in the CRAFT BEEF mark, as explained *infra*—began an intentional and deliberate brand expansion, which encompassed a significant marketing, social media, promotional, and advertising campaign in an attempt to expand CCB's geographical market reach and channels of trade throughout the United States, in an attempt to have CCB's goods recognized and distributed nationwide, including in interstate commerce to and within the State of Michigan.  Such actions constitute a significant expansion of CCB's operations and a clear progressive encroachment of MCB's market.

5.      CCB's continuous, prominent, and recently expanded use of MCB's registered "CRAFT BEEF" mark in connection with its goods, which are identical to those of MCB, is unlawful and constitutes an infringement of MCB's federally registered trademark rights in its registered CRAFT BEEF mark.

6.      MCB has not authorized CCB to use or otherwise trade upon MCB's CRAFT BEEF trademark in connection with CCB's production, distribution, promotion, advertising, marketing, offer for sale, or sale of CCB's identical goods, namely, beef-related products produced with a ration that includes the by-products from craft beer making operations.

7.      Accordingly, this action is brought on grounds of trademark infringement, with respect to U.S. Trademark Registration No. 5,525,472 for the mark CRAFT BEEF pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of unfair competition, deceptive trade practices, and trademark infringement under the statutory and common laws of the State of Michigan, all arising from Defendant, CCB's, willful and unauthorized use of MCB's federally-registered "CRAFT BEEF" trademark in connection with the marketing, advertising, promotion, offering for sale, and/or sale of identical goods via Defendant's website, social media platforms, and other interstate marketing and channels of trade.

8.      Plaintiff seeks injunctive and monetary relief, including treble the amount of CCB's profits and MCB's actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117).

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Moraine Park Farms, LLC d/b/a Michigan Craft Beef is a limited liability company formed in January 2012 under the laws of the State of Michigan, with its principal place of business located at 4694 35th Street, Zeeland, Michigan 49464.

10.     MCB's sole member is Thomas Dykstra, a citizen and resident of the State of Michigan.

11.     Defendant Colorado Craft Beef, LLC is a limited liability company formed in August 2017 under the laws of the State of Colorado, with its principal place of business at 54600 County Road CC, Akron, CO 80720.

12.     Upon information and belief, Jeff Smith and Kara Smith are the two co-founders and the only members of CCB, each of whom are citizens and residents of the State of Colorado.

13.    This Court has original subject matter jurisdiction over this controversy pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338 because Plaintiff's federal trademark claims arise under the Lanham Act, specifically 15 U.S.C. §§ 1114 and 1125.

14.    Limited liability companies have the citizenship of its members, and MCB's members are citizens of Michigan while CCB's members are citizens of Colorado.  Thus, there is complete diversity of citizenship among the parties.

15.    Thus, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this is a civil action with complete diversity of citizenship amongst the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because they arise from the same operative facts and are so related that they form part of the same case or controversy.

17.    Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in this district.

18.    This Court has personal jurisdiction over CCB because CCB consented to the jurisdiction of this Court and purposefully availed itself of the privilege of conducting business activities in Michigan when it marketed, promoted, offered for sale, sold, distributed, and delivered its goods in interstate commerce within and to the State of Michigan, to Michigan residents and consumers.

19.    CCB has sufficient minimum contacts with the State of Michigan through its online interactive website where Michigan residents and consumers located in the State of Michigan can purchase CCB's goods and, upon information and belief, it routinely sells goods and ships such

4

goods in interstate commerce to such customers in the State of Michigan.  Therefore, this Court's exercise of personal jurisdiction over CCB does not offend due process.

20.    Additionally, this Court has personal jurisdiction over CCB under MCL 600.715(1), (2) and (5) because CCB regularly transacts business in the State of Michigan, has entered into contracts for the purchase, sale, transport, and delivery of beef and/or other products and services to be furnished in the State of Michigan, and has caused damages to occur in the State of Michigan through its unlawful conduct described herein.

## GENERAL ALLEGATIONS

### A.  PLAINTIFF, MCB, AND ITS CRAFT BEEF® TRADEMARK.

21.    MCB is a family-owned and operated farm located in Zeeland, Michigan, and is one of the largest grazing ranches in the State of Michigan.

22.    MCB has been in the beef business since 2012, and regularly supplies retailers, restaurants, and individual consumers throughout the United States with gourmet-quality products that are produced in a healthy and sustainable manner, namely, "beef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups" (hereinafter the "MCB Goods"), that it has coined with the unique and proprietary source identifier "CRAFT BEEF."

23.    In particular, the beef source-identified as CRAFT BEEF by MCB is produced via a unique ration fed to the live animals that consists of grasses, legumes, and a special blend of by-products from craft beer making operations.  This special blend of craft beer by-products is comprised mostly of brewer's grains (barley), flax, apples, and cherries, among other proprietary ingredients.

24. MCB's CRAFT BEEF Mark is inherently distinctive of the source origin of its MCB Goods sold thereunder to the relevant consumer public, i.e., purchasers of high quality, sustainably-produced beef products, namely, individual consumers and high-end restaurants.

25. Since at least as early as March 1, 2016, MCB has continuously utilized the source identifier/trademark CRAFT BEEF to identify its specialty "beef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups" in United States commerce.

26. More particularly, since at least as early as March 1, 2016, MCB has continuously produced, advertised, promoted, offered for sale, marketed, distributed, and sold its MCB Goods under its CRAFT BEEF Mark to retailers, restaurants, and individual consumers throughout the United States via its brick-and-mortar store in Michigan, its authorized and defined distribution network, and via its online website at "https://www.michigancraftbeef.com" (hereinafter, the "MCB Website"), which enables direct sales to consumer throughout the United States.

27. Indeed, MCB has sold and shipped its MCB Goods source-identified with and sold under its CRAFT BEEF Mark to consumers, retailers, and/or restaurants in at least 15 different U.S. states, including Michigan and Colorado.

28. Attached hereto as **Exhibit A** are screenshots and representative samples showing MCB's use of the CRAFT BEEF Mark directly on the MCB Goods, on packaging for the MCB Goods and in displays associated with the MCB Goods at its physical retail location, on the MCB Website (complete with online webstore), and on MCB's social media accounts.

29. Attached hereto as **Exhibit B** is a list of restaurants who sell the MCB Goods, and who often publicize and identify that MCB and its beef sold under the CRAFT BEEF Mark is the

source of their beef for their restaurant or business as demonstrated in the publications and/or menus attached as **Exhibit C**.

30.     MCB is the owner of valid and subsisting federal rights in the CRAFT BEEF Mark via U.S. Trademark Registration No. 5,525,472 on the Principal Register of the USPTO covering the MCB Goods, namely, "[b]eef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups."

31.     Attached as **Exhibit D** is a true and correct copy of the formal registration certificate and USPTO status file for MCB's U.S. Trademark Registration No. 5,525,472, which cites a date of first use of the mark in interstate commerce at least as early as March 1, 2016. Registration was granted by the USPTO on July 24, 2018.

32.     On July 10, 2024, MCB filed its Combined Declaration of Use and Incontestability to maintain the CRAFT BEEF mark, registered as U.S. Trademark Registration No. 5,525,472, in full force and effect for an additional term (10) year period pursuant to 15 U.S.C. §§ 1058 and 1065.

33.     In addition to its federally registered rights in the CRAFT BEEF Mark related to U.S. Trademark Registration No. 5,525,472, as a result of MCB's widespread, continuous, long-standing use of the CRAFT BEEF Mark to identify its MCB Goods, and MCB as the source thereof, MCB owns strong, valid, and subsisting common law rights, garnered on the basis of use in commerce, in and to the CRAFT BEEF Mark.

34.     MCB has expended substantial time, money, and resources in the marketing, advertising, and promotion of its MCB Goods sold under the CRAFT BEEF Mark, including through extensive internet, print, and physical marketing, advertising, and promotions.

35.     As a result of MCB's substantial expenditures and efforts, along with its widespread, continuous, long-standing use of the same in interstate commerce, MCB's CRAFT BEEF Mark has come to signify the high quality of the of the unique "[b]eef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups" offered by MCB in the relevant market.

36.     In addition to their own advertising efforts, the MCB Goods offered under the CRAFT BEEF Mark, have also been the subject of unsolicited stories in digital and print media, highlighting the quality of the MCB Goods offered under the CRAFT BEEF Mark. Products offered under the CRAFT BEEF® Mark have been featured in publications such as, but not limited to, those provided in **Exhibit C**.

**B.  DEFENDANT CCB'S UNLAWFUL USE OF THE MARK COLORADO CRAFT BEEF.**

37.     Colorado Craft Beef, LLC (CCB) is a limited liability company formed in August 2017 under the laws of the State of Colorado and engages in the ranching and beef business. Notably, CCB was formed more than one year after MCB's first use of its CRAFT BEEF Mark.

38.     CCB sells identical goods to the MCB Goods, i.e., beef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations (hereinafter the "CCB Goods"), under a highly similar and partially-identical junior source identifier COLORADO CRAFT BEEF (hereinafter, the "Infringing Mark").

39.     More particularly, upon information and belief, CCB operates a direct-to-consumer business where it sells its CCB Goods, under the Infringing Mark directly to consumers throughout the entire United States without using any third-party retailers or wholesalers, including sales to consumers in Michigan and Colorado.

40.     Upon    information    and    belief,    CCB    owns    and    operates    the "https://coloradocraftbeef.com/" website (hereinafter, the "Infringing Website"), through which individual consumers can purchase the CCB Goods marked with the Infringing Mark. Screenshots of the Infringing Website accessed on or around September 14, 2024, are provided in **Exhibit E**, as well as other evidence of use, which clearly demonstrates CCB's use of the Infringing Mark in connection with the CCB Goods, which are identical to the MCB Goods, and secondary source items such as promotional clothing, hats, drinkware, and kitchen utensils.

41.     In addition to its use of the Infringing Mark on its product packaging, other product point of sale materials, as well as more traditional advertising for its CCB Goods, upon information and belief, CCB also owns, manages, populates, and operates the following social media accounts (collectively, hereinafter referred to as the "Infringing Social Media Accounts"), screenshots of which are provided in **Exhibit F** and were accessed on or around September 14, 2024.  The screenshots in **Exhibit F**, clearly demonstrate CCB's use of the Infringing Mark in connection with its identical CCB Goods:

- Facebook: Colorado Craft Beef, LLC - https://www.facebook.com/coloradocraftbeef (5,400+ followers)

- Instagram:  @coloradocraftbeef  -   https://www.instagram.com/coloradocraftbeef/ (28,500+ followers)

- YouTube:                          @coloradocraftbeef                          - https://www.youtube.com/channel/UCzAEju_SX9C4r5W6PWTOUGQ (152 subscribers and 25 videos)

- X: @colocraftbeef - https://x.com/colocraftbeef (2,680+ followers)

- LinkedIn: coloradocraftbeef - https://www.linkedin.com/company/coloradocraftbeef (630+ followers)

42.     Upon information and belief, CCB also conducts and broadcasts the "Steak Bites" podcasts on the Spotify platform, which premiered its debut episode on June 1, 2024 (https://open.spotify.com/show/0p3m7safBS3AXFWvzpDgh2;

https://coloradocraftbeef.com/pages/steak-bites). Screenshots of the landing page for the Steak Bites podcast on Spotify are provided as **Exhibit G**.

43.     Since its organization, which was over one year *after* MCB's recited date of first use of its CRAFT BEEF Mark in its U.S. Trademark Registration No. 5,525,472, upon information and belief, CCB has been engaged in the provision, advertising, distribution, promotion, offering for sale, and sale of the CCB Goods, which are identical goods to the MCB Goods, i.e., beef, under a highly similar and partially identical junior source identifier, namely, the Infringing Mark, *i.e.*, COLORADO CRAFT BEEF.

44.     The Infringing Mark is highly similar in appearance, phonetic pronunciation, sound, and overall commercial impression to MCB's CRAFT BEEF Mark covered by U.S. Trademark Registration No. 5,525,472.

45.     For example, the Infringing Mark includes the entirety of MCB's federally registered "CRAFT BEEF" wordmark, covered by U.S. Trademark Registration No. 5,525,472, and utilizes the respective overlapping portions, namely the literal elements "CRAFT BEEF" as the dominant, non-geographically descriptive, feature of the Infringing Mark, namely, "COLORADO CRAFT BEEF."

46.     Moreover, the domain name of the Infringing Website and the handles for each of the Infringing Social Media Accounts contain the entirety of MCB's CRAFT BEEF Mark, namely, the Infringing Website is identified by the domain name https://coloradocraftbeef.com/, and the Infringing Social Media Accounts are identified as follows: Facebook

(https://facebook.com/coloradocraftbeef), Instagram (@coloradocraftbeef), YouTube (@coloradocraftbeef) and X formerly, Twitter, (@colocraftbeef).

47.    The Infringing Website and the Infringing Social Media Accounts also conspicuously display the Infringing Mark throughout, including prominently in the Infringing Website's header, in the Infringing Website's footer, in the Social Media Account's pictures, cover photos, and posts, and, importantly, throughout the Infringing Website's e-commerce shop where individual consumers encounter the CCB Goods at the point of sale.

48.    CCB's Goods are identical and/or substantially identical to MCB's Goods, namely, "[b]eef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups".  In fact, according to prior iterations of the Infringing Website from 2022 and 2023 respectively, provided in excerpt in **Exhibit H**, the following description is given by CCB regarding its beef goods:

> " *We produce craft beef by using a well-rounded diet of ingredients that achieves a high-protein product. This includes feed stocks that would be considered waste by other industries, including products from the Colorado brewing industry and specialty feeds generated from grain crops. This allows our ranch to develop craft beef in limited seasonal batches each year.* "

49.    CCB sells its beef products via its online webstore (https://coloradocraftbeef.com/pages/shop-colorado-craft-beef) on the Infringing Website.

50.    More recently, however, CCB began an intentional and deliberate brand expansion, which encompassed a significant marketing, social media, promotional, and advertising campaign in an attempt to expand Defendant's geographical market reach and channels of trade throughout the United States.

51.    Evidence of such use is provided by statements made by CCB on its Infringing Social Media Accounts, identified *supra*, stating that CCB has expanded its business and online direct-to-consumer e-commerce store to provide "delivery nationwide" of its beef products, which includes "all 50 states." **Exhibit F**.   Therefore, Defendant's beef-related products are available for purchase under the Infringing Mark and available to consumers throughout the United States, including to consumers located within the states of Michigan and Colorado.   Such actions constitute a significant expansion of Defendant's operations and a clear progressive encroachment of Plaintiff's market.

52.    Consumers to which Colorado Craft Beef has provided, marketed, advertised, promoted, offered for sale, and sold its beef-related products to under its Infringing Mark and via its Infringing Website and Infringing Social Media Accounts are identical and/or substantially identical to the relevant consumers of MCB's Goods—namely, individuals looking to purchase beef that is produced with a ration fed that includes a blend of by-products from craft beer making operations, as well as high end restaurants.   Such consumers, namely, individuals looking to purchase beef are of a level of ordinary sophistication.

53.    CCB's use of MCB's registered "CRAFT BEEF" wordmark, covered by U.S. Trademark Registration No. 5,525,472, as the dominant, non-geographically descriptive, feature of its Infringing Mark, namely, "COLORADO CRAFT BEEF" as alleged herein has caused and is likely to cause confusion, mistake, and deception to consumers as to the source or origin of the CCB Goods bearing the Infringing Mark, offered on the Infringing Website under the Infringing Mark, and marketed, promoted, or otherwise advertised by CCB on the Infringing Website and Infringing Social Media Accounts.

54.     Said another way, of MCB's registered "CRAFT BEEF" wordmark, covered by U.S. Trademark Registration No. 5,525,472, as the dominant, non-geographically descriptive, feature of its Infringing Mark, namely, "COLORADO CRAFT BEEF" as alleged herein is likely to deceive the relevant consuming public into mistakenly believing that CCB's Goods originate from, are associated or affiliated with, or otherwise authorized, licensed, endorsed, or sponsored by MCB.

C.    **DEFENDANT'S KNOWLEDGE OF MCB'S REGISTERED TRADEMARK AND PRIOR CONDUCT OF THE PARTIES**

55.     CCB has actual knowledge of MCB, its senior registration for the CRAFT BEEF Mark in connection with the MCB Goods since as early as May 14, 2018.

56.     *First*, on or around May 14, 2018, the USPTO sent its first office action to CCB refusing CCB's Trademark Application for the "COLORADO CRAFT BEEF" (U.S. Trademark Serial No. 87/778594), informing CCB that MCB's senior prior-pending application, for the CRAFT BEEF Mark, preceded Colorado Craft Beef's application filing date and therefore, CCB's application for the "COLORADO CRAFT BEEF" mark may "be refused registration…because of a likelihood of confusion between the two marks" if Plaintiff's mark registered.

57.     Subsequently, on July 24, 2018, MCB's prior pending application for the CRAFT BEEF Mark registered as U.S. Trademark Registration No. 5,525,472.

58.     Following the registration of its U.S. Trademark Registration No. 5,525,472 for the CRAFT BEEF mark, on October 1, 2018, MCB through its counsel, sent a demand letter to CCB objecting to CCB's use of the Infringing Mark, including Colorado Craft Beef's marketing or promotion of CCB Goods thereunder, on its Infringing Website and Infringing Social Media Accounts.

13

59.     Just nine days later, on October 10, 2018, and after MCB sent its demand letter to CCB, the USPTO issued a second Office Action *refusing* CCB's Trademark Application for the mark "COLORADO CRAFT BEEF" (U.S. Trademark Serial No. 87/778594) because of a likelihood of confusion with MCB's senior registration for the CRAFT BEEF Mark (U.S. Trademark Registration No. 5,525,472

60.     CCB did not respond or take any other action related to the USPTO's second Office Action, and therefore, on May 8, 2019, the USPTO issued a Notice of Abandonment for CCB's U.S. Trademark Serial No. 87/778594 for the mark "COLORADO CRAFT BEEF."

61.     On or around October 13, 2018, just days after receiving Michigan Craft Beef's cease-and-desist letter and the USPTO's second Office Action with respect to U.S. Trademark Serial No. 87/778594, the Parties initiated a dialogue with respect to MCB's October 1, 2018, letter regarding MCB's registered trademark rights.

62.     On or around October 15, 2018, Jeff Smith of CCB then sent an email to Tom Dykstra of MCB, acknowledging MCB's registered trademark rights in the CRAFT BEEF Mark and further requesting to "keep the conversation moving along" towards reaching a "a potential licensing agreement" between the Parties.

63.     To date, despite several attempts by MCB to continue the dialogue between the Parties, MCB, after reasonable inquiry, has procured no evidence, nor obtained any assurances from CCB that it has complied or intends to comply with MCB's demands.  No license agreement was reached between the Parties, and MCB has not in any way authorized, licensed, endorsed, or sponsored CCB Goods or otherwise authorized or acquiesced to CCB use of MCB's registered CRAFT BEEF Mark.

64.     Instead, to the contrary, upon information and belief, CCB has engaged in and continues to use MCB's registered CRAFT BEEF trademark on its identical goods  (i) with full knowledge of MCB's rights in and to U.S. Trademark Registration No. 5,525,472 for the CRAFT BEEF Mark, and (ii) with intentional, deliberate, and willful intent to progressively encroach upon MCB's market and trade on the longstanding goodwill of MCB's good will and reputation built in the CRAFT BEEF Mark over the last several years, thereby causing confusion and deception of relevant consumers in the marketplace with hopes to divert potential customers and usurping potential sales of MCB's Goods and replacing them with sales of CCB's Goods sold under the Infringing Mark.

65.     In the summer of 2024, MCB began noticing an influx of sponsored Instagram posts, among other advertisements, for CCB and the CCB Goods appearing on respective social media platforms as suggested content for the social media accounts of MCB's and Tom Dykstra.

66.     Unbeknownst to MCB, CCB's silence following initial correspondence, was actually the result of a delayed but deliberately planned and comprehensive launch of a new marketing, advertising, and social media campaign to expand CCB's geographical market reach and channels of trade for the CCB Goods bearing the Infringing Mark throughout the United States.

67.     Specifically, Defendant announced on or around November 2, 2023, that it was partnering with various celebrity podcasters, business-owners, and famous authors such as Jocko Willink, Brian Littlefield, and Pete Roberts to "bring craft beef to every doorstep possible." The YouTube video announcing such partnership and communicating Defendant's affirmative statements regarding bringing "Craft Beef to every doorstep possible" can be found here: https://www.youtube.com/watch?v=0mJEALBsauA with a screen shot of the same provided in **Exhibit I**.

15

68.     As part of this deliberate brand resurgence, expansion, and progressive encroachment of MCB's market, CCB continued to use the Infringing Mark to source identify its CCB Goods via a substantial number of unauthorized activities, for example:

- January 1, 2024, CCB announced it partnered with Jack Arnold, a celebrity chef and international BBQ event host and cook, via a *collaboration* post on Instagram (*i.e.*, a single post that appears on two different accounts including the Infringing Instagram Account using the handle @coloradocraftbeeef) to carry out several live tour cooking events in Florida, Georgia, North Carolina, Colorado, and other states between February and May of 2024. *See e.g.,* **Exhibit J**.

- On or around June 13, 2024, CCB and its owner Kara Smith launched a podcast titled "SteakBites" and have recorded at least eight episodes.  All eight episodes have since been posted on Defendant's Infringing YouTube channel, identified by the handle @coloradocraftbeef, where each episode contains a video recording that prominently displays the Infringing Mark throughout the entire episode, while also containing direct links and references to the Infringing Social Media Accounts. Such          podcasts          can          be          found          on          YouTube (https://www.youtube.com/@coloradocraftbeef/podcasts)          and          Spotify (https://open.spotify.com/show/0p3m7safBS3AXFWvzpDgh2).    Screenshots of such podcasts are provided below and in **Exhibit F** and **Exhibit G.**

- On or around August 14, 2024, CCB announced via its Facebook page, identified by the handle @coloradocraftbeef, that CCB has partnered with Terrace 16, a restaurant located in the Trump International Hotel & Tower Chicago, to bring CCB's Goods branded with the Infringing Mark to Chicago, Illinois:



- On or around June 20, 2024, CCB submitted a new federal trademark application, namely, U.S. Trademark Application (Serial No. 98/611663) for the wordmark "COLORADO CRAFT BEEF" in conjunction with meat processing, beef delivery and distribution; online promotion, marketing, advertising.

69.    In light of CCB's deliberate, willful, significant, comprehensive, and continuous nationwide efforts—particularly those efforts that have substantially increased over the last 10 months—to sell, offer, and expand its sale of goods that directly overlap with those of MCB, MCB is now forced to bring legal action to prevent CCB's continued infringement of its CRAFT BEEF Mark and progressive encroachment of its market to protect its valuable and longstanding rights in its CRAFT BEEF Mark and U.S. Trademark Registration No.  5,525,472.

70.    As a result, CCB's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to MCB and to its valuable reputation and goodwill with the relevant consuming public for which MCB has no adequate remedy at law.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114(1)

71.    Plaintiff repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72.    Plaintiff, MCB, owns U.S. Trademark Registration No. 5,525,472 (the "Registration") for the mark CRAFT BEEF for use in connection with "beef produced with a ration fed to the live animals that includes a blend of by-products of craft beer making operations, consisting of brewer's grains, flax, apples, cherries, and/or related by-products and syrups".

73.    MCB, has continuously used the CRAFT BEEF mark in connection with the sale, marketing, advertising, and promotion in connection with its MCB Goods in interstate commerce since at least as early as its recited date of first use of March 1, 2016.

17

74.    MCB's recited date of first use of March 1, 2016, pre-dates the formation of CCB by over one-year, and as such MCB has clear priority of use of the CRAFT BEEF Mark.

75.    Any use of the CRAFT BEEF mark by CCB, in connection with the CCB Goods has been without the consent of MCB.

76.    CCB, willfully and knowingly used, and continues to use, the CCB Marks in commerce for the purposes of selling the CCB Goods without MCB's consent.

77.    CCB's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes a wrongful use or unauthorized reproduction, copy, or colorable imitation of MCB's registered CRAFT BEEF Mark.

78.    CCB's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to cause confusion, cause mistake, or otherwise deceive consumers as to the origin, source, sponsorship, or affiliation of CCB's Goods by or with MCB and is likely to cause consumers to believe, contrary to fact, that CCB's Goods and/or services origin in from or are sold, authorized, endorsed, or sponsored by MCB, or that CCB itself is in some way affiliated with or sponsored by MCB.

79.    Therefore, Defendants' conduct, as alleged herein—particularly its use of the Infringing Mark directly on the CCB Goods and/or in connection with its production, distribution, marketing, advertising, promoting, offering for sale, and sale of the CCB Goods both on the Infringing Website and Infringing Social Media Accounts—has been willful and intended to reap the benefit of MCB's reputation and goodwill that it has created in its registered CRAFT BEEF Mark, and as such constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

80.    Defendant has committed the foregoing acts of infringement alleged herein with full knowledge of Plaintiff's prior rights in and to the CRAFT BEEF Mark and with the willful intent to progressively encroach upon Plaintiff's market for its MCB Goods sold under the CRAFT BEEF Mark, trade on the longstanding goodwill of Plaintiff's CRAFT BEEF Mark, cause confusion and deception in the marketplace, and divert potential customers and their respective sales from Plaintiff to Defendant.

81.    Defendant's conduct as alleged herein has caused and will continue to cause Plaintiff to suffer damages including but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

82.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest, which upon information and belief exceed $75,000, exclusive of costs and interest.

## COUNT II - FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

83.    Plaintiff repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84.    Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes false designation of origin, that is likely to cause confusion, cause mistake, deceive and/or mislead consumers as to the origin, source, sponsorship, or affiliation of the CCB Goods , or otherwise suggest that the CCB Goods originated with or are sponsored, endorsed, or controlled by MCB or that CCB's commercial activities are endorsed, sponsored or otherwise authorized by MCB.

19

85.    Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact, and Defendant's willful and deliberate conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

86.    Defendant's conduct as alleged herein has caused and will continue to cause Plaintiff to suffer damages including but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

87.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest, which upon information and belief exceed $75,000, exclusive of costs and interest.

## COUNT III - UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT

88.    Plaintiff repeats and realleges paragraphs 1 through 87 hereof, as if fully set forth herein.

89.    The Michigan Consumer Protection Act (MCPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including, inter alia, "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  See Mich. Comp. Laws § 445.903.

90.    Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to cause confusion, cause mistake, or otherwise deceive consumers as to the origin, source, sponsorship, or affiliation of CCB's Goods by or with Plaintiff and is likely to cause consumers to believe, contrary to fact, that CCB's Goods and/or services origin in from or are sold, authorized,

endorsed, or sponsored by Plaintiff, or that CCB itself is in some way affiliated with or sponsored by Plaintiff.

91.    Defendant's conduct as alleged herein has caused and will continue to cause Plaintiff to suffer damages including but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

92.    Plaintiff is entitled to, among other relief the Court deems just and equitable, a judgment that Defendant has violated the MCPA, and actual damages and reasonable attorneys' fees and costs under the MCPA, which upon information and belief exceed $75,000, exclusive of costs and interest.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

93.    Plaintiff repeats and realleges paragraphs 1 through 92 hereof, as if fully set forth herein.

94.    Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to cause confusion, cause mistake, or otherwise deceive consumers as to the origin, source, sponsorship, or affiliation of CCB's Goods by or with Plaintiff and is likely to cause consumers to believe, contrary to fact, that CCB's Goods and/or services origin in from or are sold, authorized, endorsed, or sponsored by Plaintiff, or that CCB itself is in some way affiliated with or sponsored by Plaintiff.

95.    Defendants' conduct, as alleged herein, has had a substantial effect on interstate commerce and constitutes common law trademark infringement.

96.    Defendant's conduct as alleged herein has caused and will continue to cause Plaintiff to suffer damages including but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

97.    Therefore, Plaintiff is entitled to, among other relief, a judgment that Defendant has committed common law trademark infringement, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, together with prejudgment and post-judgment interest, among all other such relief this Court may determine is just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.    That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

B.    That Defendant has violated The Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901 *et seq.*) and the common laws of the State of Michigan.

C.    That Defendant has committed common law trademark infringement.

D.    Granting an injunction temporarily, preliminarily, and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

      i.    Distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to distribute/provide, sell, market, advertise, or promote the CCB Goods bearing the source identifier "CRAFT BEEF," or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's CRAFT BEEF Mark;

ii.    Engaging in any activity that infringes Plaintiff's rights in and to its CRAFT BEEF Mark pursuant to U.S. Trademark Registration No. 5,525,472;

iii.    Engaging in any activity constituting unfair competition with Plaintiff;

iv.    Making or displaying any statement, representation, or depiction that is likely to lead the relevant consuming public to believe that (i) the CCB Goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) the MCB Goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant's;

v.    Using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods, and/or services with Plaintiff or tend to do so;

vi.    Registering, applying to register, or maintaining on any register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating "CRAFT BEEF," or any other mark that infringes or is likely to be confused with Plaintiff's CRAFT BEEF Mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

vii.    Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (vii).

E.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that the CCB Goods manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant is in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with the MCB Goods.

F.    Directing Defendant to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all social media accounts, websites, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating "CRAFT BEEF," or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's CRAFT BEEF Marks, and to direct all individuals and establishments wherever located in the United States that advertise, promote, sell, or offer for sale the CCB Goods to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, advertisements, signs, displays, and other materials featuring or bearing "CRAFT BEEF," or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's CRAFT BEEF Marks, and to immediately remove them from public access and view.

G.    Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith.

24

H.      Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), which upon information and belief exceed $75,000, exclusive of costs and interest.

I.      Directing that Defendant account to and pay to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby, which upon information and belief exceed $75,000, exclusive of costs and interest.

J.      Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

K.      Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

L.      Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

M.      Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

**VARNUM LLP**
Attorneys for Plaintiff

Dated: October 18, 2024          By: _____

                                 Staci R. DeRegnaucourt (P75383)
                                 Justin M. Wolber (P85728)
                                 Bridgewater Place, P.O. Box 352
                                 Grand Rapids, MI 49501-0352
                                 (616) 336-6000
                                 srderegnaucourt@varnumlaw.com
                                 jmwolber@varnumlaw.com

26029926